UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )   Crim. No. 1:25MJ208 |
| | ) |
| JAMAR BYRD | ) |

**JAMAR BYRD'S MOTION TO DISMISS WITH PREJUDICE**

Comes now, Jamar Byrd, and moves this Court to dismiss the Information with prejudice. The government has moved to dismiss the Information without prejudice under Federal Rule of Criminal Procedure 48(a). ECF. No. 9. Mr. Byrd does not object to dismissal but for the reasons below, the Information must be dismissed *with prejudice*. The government's strategic choice to dismiss charges here so that it may bring charges in a more favorable venue is exactly the gamesmanship that amounts to objective prosecutorial harassment under Rule 48(a). The court, therefore, should dismiss the charges with prejudice. Similarly, the Speedy Trial Act requires dismissal with prejudice.

**Relevant Background**

Jamar Byrd was arrested on September 5, 2005, and charged by complaint with felony assaulting and resisting law enforcement officers in violation of 18 U.S.C. §111(a). The law enforcement officers Mr. Byrd allegedly assaulted are Metropolitan Police Department (MPD) officers. Undersigned counsel immediately moved to dismiss the complaint for failure to state a federal offense. The government opposed.

Mr. Byrd was detained following his arrest for *five days* until his presentment in federal court on an Information charging him with misdemeanor assaulting and resisting. The government

did not and indeed could not request detention under the Bail Reform Act. At presentment, counsel raised the issue of his illegal detention. The Magistrate Court agreed that Mr. Byrd's detention for four nights was wrong. The government had no good answer for why Mr. Byrd had been detained for four nights and five days on a misdemeanor. The Court denied Mr. Byrd's pending Motion to dismiss and released him on his personal recognizance. The government has now moved to dismiss Mr. Byrd's case and has represented that it will charge him in Superior Court.

## ARGUMENT

### I. Rule 48

Federal Rule of Criminal Procedure 48(a) "allow[s] courts to consider the 'public interest, fair administration of criminal justice and preservation of judicial integrity'" in determining whether to grant a dismissal without prejudice. *United States v. Poindexter*, 719 F. Supp. 6, 10 n. 10 (D.D.C. 1989) (quoting *United States v. Strayer*, 846 F.2d 1262, 1265 (10th Cir. 1988)); *see also United States v. Borges*, 153 F. Supp. 3d 216, 219 (D.D.C. 2015) (same). The Court may reject a government motion for dismissal without prejudice and order a dismissal with prejudice. *Poindexter*, 719 F. Supp. at 10. Indeed, courts have an independent obligation to ensure that dismissal without prejudice would not prejudice a defendant.

Though there is "a strong presumption in favor of a no-prejudice dismissal, the ultimate decision in that regard depends upon the purpose sought to be achieved by the government and its effect on the accused." *Id*. "The primary reason for the 'leave of court' requirement [in Rule 48(a)] is to 'protect a defendant from harassment, through a prosecutor's charging, dismissing without having placed a defendant in jeopardy, and commencing another prosecution at a different time or place deemed more favorable to the prosecution.'" *United States v. Pitts*, 331 F.R.D. 199, 202

(D.D.C. 2019) (quoting *United States v. Ammidown*, 497 F.2d 615, 620 (D.C. Cir. 1973)); *Rinaldi v. United States*, 434 U.S. 22, 30 n.15 (1977).

Finding that a defendant would be subject to harassment through dismissal without prejudice does not require a showing of bad faith on the part of the government. "[T]he question is not whether the government was acting in bad faith, but rather whether the actions of the government objectively amounted to harassment." *Pitts*, 331 F.R.D. at 203; *see also United States v. Salinas*, 693 F.2d 348, 353 (5th Cir. 1982) (indictment should have been dismissed with prejudice where government moved to dismiss due to dissatisfaction with selected jury). The Court must consider the purpose the government is seeking to achieve and the effect on the accused. *United States v. Madzarac*, 678 F. Supp. 3d 42, 46 (D.D.C. 2023); *United States v. Adams*, 777 F. Supp. 3d 185, 217 (S.D.N.Y. 2025) ("A court can determine whether the potential for harassment renders a dismissal with prejudice in the public interest by looking at the *purpose* of the government's dismissal and the *effect* it has on the defendant." (quoting *Madzarac*, 678 F. Supp. 3d at 46)). If dismissal would result in harassment to the defendant, dismissal without prejudice will *never* be in the public interest because "[i]t is obvious that the public interest is not served by harassing the defendant." *Salinas*, 693 F.2d at 351 n.15; *see also United States v. Omni Consortium, Inc.*, 525 F. Supp. 2d 808, 812 n.3 (W.D. TX 2007)

Dismissal of an indictment for the purpose of re-bringing it at a time or place more favorable to the government is precisely the type of conduct that Rule 48(a) was designed to prevent. *Rinaldi*, 434 U.S. at 29 n.15 ("The principal object of the 'leave of court requirement is . . . to protect a defendant against prosecutorial harassment, *e.g.*, charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection."). The leave of court requirement included in Rule 48(a) has been characterized as a

3

"power to check power," *United States v. Cowan*, 524 F.2d 504, 513 (5th Cir. 1975)—an "essential check on potential misconduct by the executive branch," *United States v. James*, 861 F. Supp. 151, 155 (D.D.C. 1994). "To ensure that the government's request for dismissal of criminal charges 'sufficiently protects the public,' the government may be required to submit 'a statement of reasons or underlying factual basis,' which must be 'substantial' to justify the dismissal and not 'a mere conclusory statement.'" *United States v. Mangia*¸ 2025 WL 266493 (Jan. 22, 2025) (Howell, J.) (quoting *Ammidown*, 497 F.2d at 620). Here, the government has provided no "sufficient basis for avoiding dismissal with prejudice." *Poindexter*, 719 F. Supp. at 11. The government submits that it seeks dismissal without prejudice because it has determined that prosecution is better suited for another venue. That explanation, however, omits the basis for the decision to move this charge to another venue and the charge filed in the other venue. In doing so, the government is simply seeking a more advantageous position which Rule 48 prohibits. *See Pitts*, 331 F.R.D at 201 ("[b]ecause dismissal without prejudice constitutes a strategic use of Rule 48 prohibited under District of Columbia Circuit precedent…and objectively amounts to prosecutorial harassment, the Court will dismiss the indictment with prejudice"); *United States v. Simmons*, Case No. 18-cr-344 (EGS), 2022 WL 1302888 at *19 (D.D.C. May 2, 2022) (Sullivan, J.) ("Courts have found that government conduct constitutes harassment if the reason for the dismissal is to gain a tactical advantage.").

The Information in this matter charges Mr. Byrd with assaulting and resisting certain officers on September 5, 2025. Now the government seeks to charge the same conduct in Superior Court. The government is seeking leave to keep open the option of refiling felony threat charges for the remaining allegations in the federal complaint at some later time. Doing so "would objectively amount to harassment" by allowing "the prosecutor to dismiss charges but nevertheless

4

keep them in abeyance for an indefinite period of time in the hope of expectation that something will turn up to remove the complications" of the initial prosecution. *Poindexter*, 719 F. Supp. at 11. Courts should not dismiss charges without prejudice to permit the government to "'*commence[] another prosecution at a different time or place deemed more favorable to the prosecution.*'" *Id.* (emphasis in original) (quoting *Ammidown*, 497 F.2d at 620). "[S]uch a strategy of dismissing a case without prejudice in order to bring it again under more advantageous circumstances is precisely the kind of tactical situation that is prohibited by Rule 48(a) and its progeny." *United States v. Borges*, 153 F. Supp. 3d 216, 220 (D.D.C.) (quotation marks omitted); *United Salinas*, 693 F.2d at 353. Indeed, the Fifth Circuit has found dismissal with prejudice appropriate where the government sought dismissal without prejudice simply to bring the charges before a different jury. *Salinas*, 693 F.2d 348. In *Salinas*, the Fifth Circuit held that where the government sought dismissal because "[t]he government was simply displeased with the selected jury," the government could not retain the right to bring the charges again and get a second bite at the apple of picking a jury. The logic of *Salinas* extends here.

    The government here is seeking the ability to hold the charges in abeyance indefinitely to someday charge Mr. Byrd again in federal court. Given the gate-keeping function the leave of court requirement serves, when deciding whether to grant leave to dismiss under Rule 48, a court cannot simply "rubber stamp [ ] the prosecutor's decision." *Ammidown*, 497 F.2d at 622. Protecting the defendant from "prosecutorial harassment, *e.g.*, charging, dismissing, and recharging," must be the court's "primary" consideration when deciding whether to grant the government leave to dismiss post-indictment. *Rinaldi*, 434 U.S. at 30 n.15; *see also United States v. Cox*, 342 F.2d 167, 171 (5th Cir. 1965). Here, the government has engaged in precisely the "prosecutorial harassment" that the Supreme Court has held Rule 48 is designed to prevent: "charging, dismissing, and

5

recharging" a case at a time or place more beneficial to the government. *Rinaldi*, 430 U.S. at 30 n.15. This "prospect of reindictment" cannot be permitted to "hang[] like the proverbial Sword of Damocles over the accused." *United states v. Adams*, 777 F. Supp. 3d 185, 216 (S.D.N.Y. 2025). Several courts in this district have dismissed cases with prejudice to avoid similar government attempts to obtain a tactical advantage. *See, e.g., Pitts*, 331 F.R.D. 199 (dismissing with prejudice where government failed to timely obtain DNA testing consistent with court's discovery order and sought dismissal to obtain testing and bring charges again); *Borges*, 153 F. Supp. 3d at 220 (D.D.C. 2015) (dismissing with prejudice where government sought dismissal without prejudice in the hope that witness problem would later be cured); *Poindexter*, 719 F. Supp. 6 (dismissing with prejudice charges government sought to dismiss without prejudice because classified information precluded presentation of evidence, finding that allowing government such tactical advantage would be harassment).The unusual circumstances of this case similarly support dismissal with prejudice. *Borges*, 153 F. Supp. at 220 (finding dismissal with prejudice warranted where facts unusual and unlike typical cases). Dismissal with prejudice is particularly appropriate where "the "integrity of the government's case has been tainted." *Id.*

      The government's decisions in recent weeks to bring excessive federal charges first before evaluating the strength of the case and then moving to dismiss either after a no-bill or after the defense has filed meritorious motions to dismiss is unprecedented. Indeed, while discussing the spate of recent "no-bills" cases with the media, seasoned federal prosecutors assert this is something they have never seen. One former member of the U.S. Attorney's office told CBS News, "Not only have I never heard of this happening, I've never heard of a prosecutor who's heard of

6

this happening."[1] Another asserted that "[i]t is exceptionally rare for federal grand juries to reject proposed changes, given the low evidentiary bar for indictment and the Justice Department's policy of pursuing cases only when there is sufficient evidence to both secure and sustain a conviction."[2] Yet another former prosecutor told National Public Radio that between his 35 years of experience and a former colleague's 25 years of experience, they were aware of only one failure to obtain an indictment by the U.S. Attorney's Office: "We compared notes last week. He never had a case no-billed by the grand jury, and I just had one."[3] The U.S. Attorney's Office recently argued that the return of multiple "no-bills" by federal grand juries demonstrates that "[t]he system here is broken on many levels."[4] To the contrary, the grand juries are exercising their constitutional duty to reject the U.S. Attorney's overreach. The government has apparently responded to the grand juries doing their job by filing misdemeanor Informations in federal court to avoid the grand juries. Here, the government charged Mr. Byrd in federal court, detained him, opposed Mr. Byrd's meritorious motion to dismiss, and then filed a motion to dismiss so that it could charge him in Superior Court while trying to leave open the possibility of charging him in federal court again. Enough is enough. The Court should not tolerate the government running roughshod over Mr. Byrd's life. Pursuant to Rule 48, the Court should dismiss the charges against Mr. Byrd with prejudice.

---

[1] Scott McFarlane, *D.C. grand jurors reject latest wave of Justice Dept. indictment requests*, CBS News (Sept. 3, 2025).

[2] *Id.; see also* 9 Justice Manual § 9-27.220 (An "attorney for the government should comment or recommend federal prosecution if he/she believes that the persons' conduct constitutes a federal offense, and that the admissible evidence will probably be sufficient to obtain and sustain a conviction.").

[3] Carrie Johnson, *As Trump cracks down on D.C. crime, grand juries emerge as a check on overreach*, National Public Radio (Sept. 5, 2025).

[4] McFarlane, *supra*.

Respectfully submitted,

A. J. Kramer
Federal Public Defender

_____/s/_____
Elizabeth Mullin
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Washington, D.C. 20004
(202) 208-7500