UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.          ) | Crim. No. 1:25MJ208 |
| ) | |
| JAMAR BYRD     ) | |

### JAMAR BYRD'S MOTION TO EXPUNGE THE ARREST WARRANT

Comes now, Jamar Byrd, and moves this Court to expunge the arrest warrant and complaint in this case.

### Relevant Background

Jamar Byrd was arrested on September 5, 2005, and charged by complaint with felony assaulting and resisting law enforcement officers in violation of 18 U.S.C. §111(a). The law enforcement officers Mr. Byrd allegedly assaulted are Metropolitan Police Department (MPD) officers. Undersigned counsel immediately moved to dismiss the complaint for failure to state a federal offense. The government opposed.

Mr. Byrd was detained following his arrest for *five days* until his presentment in federal court on an Information charging him with misdemeanor assaulting and resisting. The government did not and indeed could not request detention under the Bail Reform Act. During the five days that he was locked in the jail, he missed work and wages. At presentment, counsel raised the issue of his illegal detention. When Mr. Byrd was finally released, he had to explain to his supervisor that he been detained at the D.C. Jail and that his detention was not because he had been accused of committing a serious crime. The Magistrate Court agreed that Mr. Byrd's detention for four nights was wrong. The government had no good answer for why Mr. Byrd had been detained for

four nights and five days on a misdemeanor. The Court denied Mr. Byrd's pending Motion to dismiss and released him on his personal recognizance. On September 18, 2025, the government moved to dismiss Mr. Byrd's case, representing that it had elected to charge Mr. Byrd for the very same alleged offense in Superior Court. On the same date, undersigned counsel moved to dismiss the case with prejudice. ECF. Nos. 9, 10.

I.     **The Court Should Expunge Mr. Byrd's Arrest Warrant And Complaint**

In other recent similar cases in which the government recklessly filed a complaint in federal court only to dismiss it weeks or days later, the government has argued that the Court does not have the ability to expunge an arrest warrant. Not so. While there may be no applicable expungement statute, "courts have the inherent, equitable power to expunge arrest records." *Livingston v. United States Department of Justice*, 759 F.2d 74, 78 (D.C. Cir. 1985). This is true both where there is an "unlawful … arrest" and where "equitable considerations" support it. *United States v. McKnight*, 33 F. Supp. 3d 577, 581 (D. Md. 2014) (noting that "the courts clearly have ancillary jurisdiction to expunge records of unlawful … arrests," while expunging arrest record where individual completed pretrial diversion program using its equitable discretion to "manage its proceedings, vindicate its authority, and (in particular) effectuate its decrees." (internal quotations omitted)).

As one court explained:

> In the absence of a specific denial of power, this court may fully effectuate its jurisdiction and do complete justice in the cases before it. *Morrow v. District of Columbia,* [] 417 F.2d 728, 737-738 [(D.C. Cir. 1969)]. *Cf.*, 28 U.S.C. § 1651 (All Writs Statute). This plenary power undoubtedly includes the authority to order expunction of criminal records where circumstances demand such action. *Menard v. Mitchell*, [] 430 F.2d 486 ([D.C. Cir.] 1970); *Kowall v. United States*, 53 F.R.D. 211, 213 (W.D. Mich. 1971) (expunction ordered in connection with granting relief under 28 U.S.C. § 2255); *United States v. Kalish,* 271 F.Supp. 968 (D.P.R. 1967). . . . Expunction has generally been ordered where the arrest was without probable cause, *Menard v. Mitchell*, *supra*, for harassment, or where there are extraordinary

circumstances such as mass arrest. *See, e.g., Wheeler v. Goodman*, 306 F.Supp. 58, 65-66 (W.D.N.C. 1969).

*United States v. Bohr*, 406 F. Supp. 1218, 1219 (E.D. Wis. 1976) (granting expungement where the court dismissed the indictment upon the filing of a motion to quash).

Here, Mr. Byrd was arrested and charged with a federal crime that he did not commit; and the government recognized as much by suddenly changing course and charging him in Superior Court. Expungement is wholly appropriate in these extraordinary circumstances. As in *McKnight* and *Bohr*, "[Mr. Byrd's] case never reached the trial stage[,]" and "[w]ithout subsequent proceedings, expunction of the [] arrest records would be a simple and brief matter." *Bohr*, 406 F. Supp. at 1219. Moreover, the balance of equities is clearly in Mr. Byrd's favor. "The potential that improper inferences will be drawn from arrest records is significant." *Id*. at 1220 (citing *Morrow v. District of Columbia,* supra, at 742; *Menard v. Mitchell,* supra, at 491). Yet, these records are the product of the government ignoring its own guidance, disregarding established precedent and a "charge first, ask questions later" mentality at the U.S. Attorney's Office. Jamieson, *Judge Warns Of 'Lawlessness' In Trump's DC Policing Takeover*. There is simply no valid interest that the government or the public has in maintaining access to records that are a product of a reckless prosecution and the arrest record for a federal offense should be expunged.

                Respectfully Submitted,

                A.J. KRAMER
                FEDERAL PUBLIC DEFENDER


                _____/s/_____
                ELIZABETH MULLIN
                Assistant Federal Public Defender
                625 Indiana Avenue, N.W., Suite 550
                Washington, D.C.  20004
                (202) 208-7500